RECEIVED

IN THE UNITED STATES DISTRICT COURT FOR
THE MIDDLE DISTRICT OF ALABAMA

2006 APR -5 A 9:57

BRENT ANDRE PARRIS #203767 )
Full name and prison number of )
plaintiff(s) )
)
)
v. )   CIVIL ACTION NO. 2:06cv303-MEF
KATHRYNE T. QUATTLEBAUM, Alabama )   (To be supplied by the Clerk of the
Probation & Parole Officer of )    U.S. District Court)
Alabama Board of Pardons and )
Paroles )
PAUL WHALEY, Director of )
Classification, Alabama )
Department of Corrections )
)
_____ )
Name of person(s) who violated )
your constitutional rights. )
(List the names of all the persons) )

I.   PREVIOUS LAWSUITS

  A.   Have you begun other lawsuits in state or federal court dealing with the same or similar facts involved in this action?   Yes ( )   No (XX)

  B.   Have you begun other lawsuits in state or federal court relating to your imprisonment?   Yes ( )   No (XX)

  C.   If your answer to A or B is yes, describe each lawsuit in the space below. (If there is more than one lawsuit, describe the additional lawsuits on another piece of paper, using the same outline).

   1.   Parties to this previous lawsuit:
        Plaintiff(s) _____None_____

        Defendant(s) _____N/A_____

   2.   Court (if federal court, name the district; if state court, name the county)
        _____N/A_____

   3.   Docket No. _____N/A_____

   4.   Name of Judge to whom case was assigned _____N/A_____

5.  Disposition (for example: Was the case dismissed? Was it appealed? Is it still pending? ___N/A___

6.  Approximate date of filing lawsuit ___N/A___

7.  Approximate date of disposition ___N/A___

II. PLACE OF PRESENT CONFINEMENT ___Limestone Correctional Facility   Dorm 9-A-16___
28779 Nick Davis Road, Harvest, Alabama 35749

PLACE OR INSTITUTION WHERE INCIDENT OCCURRED ___Alabama Board of Pardons & Paroles; Central Records of the Alabama Department of Corrections___

III. NAME AND ADDRESS OF INDIVIDUAL(S) YOU ALLEGE VIOLATED YOUR CONSTITUTIONAL RIGHTS.

NAME                              ADDRESS

1. Kathryne T. Quattlebaum, Alabama Probation & Parole Officer
   Alabama Board of Pardons & Paroles, P. O. Box 302405, Montgomery, AL 36130

2. Paul Whaley, Director of Classification
   Alabama Depatment of Corrections, P. O. Box 301501, Montgomery, AL 36130

3. _____

4. _____

5. _____

6. _____

IV. THE DATE UPON WHICH SAID VIOLATION OCCURRED ___10-05-2000 date of PSI Report and approximately 8-31-2005 date of "R" status___

V. STATE BRIEFLY THE GROUNDS ON WHICH YOU BASE YOUR ALLEGATION THAT YOUR CONSTITUTIONAL RIGHTS ARE BEING VIOLATED:

GROUND ONE: ___See Attached Pages___

STATE BRIEFLY THE FACTS WHICH SUPPORT THIS GROUND. (State as best you can the time, place, manner, and person involved).

___See Attached Pages___

-2-

GROUND TWO: None

SUPPORTING FACTS: N/A

GROUND THREE: None

SUPPORTING FACTS: N/A

VI. STATE BRIEFLY EXACTLY WHAT YOU WANT THE COURT TO DO FOR YOU. MAKE NO LEGAL ARGUMENT. CITE NO CASES OR STATUTES.
Order Defendant Quattlebaum to remove false and unauthorized information from PSI Report. Order Defendant Whaley to remove PLaintiff from "R" custody status. Order Defendants Quattlebaum and Whaley to pay the $250.00 filing fee in this action or reimburse Plaintiff for the $250.00 fee.

*Brent Parris*
Signature of plaintiff(s)

I declare under penalty of perjury that the foregoing is true and correct.

EXECUTED on 4-3-06
(date)

*Brent Parris*
Signature of plaintiff(s)

## GROUND ONE

Plaintiff's Due Process rights and Equal Protection guarantees under the Fourteenth Amendment were violated by Defendant Kathryne T. Quattlebaum, Alabama Probation & Parole Officer, who placed false information concerning the details of the offense in Plaintiff's Pre-Sentence Investigation Report ( hereinafter referred to as "PSI Report" ); and by Defendant Paul Whaley, Director of Classification, for using this information to place Plaintiff in restricted ( hereinafter referred to as "R status" ) custody status.

## FACTS

On 4-12-97, Plaintiff was with his girlfriend, Katie Conner, and their infant son. Plaintiff had a slight argument with Katie so he placed the baby in his vehicle and left the residence. Plaintiff only drove off for a few minutes and returned to the residence to pick up Katie. Before Katie could walk to the vehicle, the alleged victim attacked Plaintiff through the vehicle window with a knife. A wrestling match

ensued through the vehicle window over the knife for almost a minute, during which time Plaintiff was slashed several times on the forehead with the knife as the alleged victim attempted to unlock the rear vehicle door in order to get to Plaintiff's child.

This was a dark, stormy, rainy, and muddy night. After pulling back from Plaintiff's vehicle window, the alleged victim momentarily moved toward the house where a porch light was burning. The alleged victim stopped, bent over to pick something up from the ground, and then began walking back towards Plaintiff and his vehicle. Plaintiff was looking into the porch light, which made visibility worse than it already was, and he was also having trouble seeing due to the blood running from his forehead into his eyes. The porch light backlit the alleged victim and reduced him to a silhouette. To better defend himself and the baby, Plaintiff grabbed a pistol he had in the vehicle and exited the vehicle. Plaintiff did not know if the pistol was chambered or not, so he breached the pistol and a shell ejected onto the ground. Plaintiff hoped the alleged victim would see this demonstration and stop. The alleged victim, however, continued towards Plaintiff and the baby who was still in the vehicle. Plaintiff raised his pistol and then fired a single shot at the alleged victim's general vicinity…not to hit him… but to scare him away. At the exact moment Plaintiff raised his

pistol and fired the shot, the alleged victim turned sharply to his left, then took several steps and appeared to have dove to the ground for cover. Plaintiff did not know at the time that the alleged victim had been shot and that when he turned to his left, he was hit in the right flank <u>prior to diving to the ground</u>.

Plaintiff did not drive away from the residence when he was first assaulted by the alleged victim because he was also concerned for Katie, the baby's mother. Plaintiff did not know what the alleged victim would do next, even to Katie, so when he exited the vehicle it was also to protect Katie from the alleged victim who was acting like a madman and who was on drugs. This entire incident, from the time Plaintiff exited the vehicle, until he fired the single shot, happened very quickly and lasted no more than 3 to 5 seconds.

Next, Katie and Plaintiff entered the vehicle and drove away, not to flee the scene, but to escape gunfire from Jason Conner who emerged from the residence with an assault rifle and began firing at Plaintiff's vehicle. Plaintiff then drove to a nearby motel where he called authorities. When the police arrived, Plaintiff asked Officer Freeman if he had hit the alleged victim; and he told Plaintiff that he had. Later at the hospital where Plaintiff was being treated for his injuries, he was told the alleged victim had been shot in the right flank.

Plaintiff was later arrested for attempted murder for which he was convicted.

Plaintiff knew the alleged victim, Randy Davidson, prior to this incident. He was a drug addict and drank a great deal which would always cause him to do crazy things. He seemed to have low IQ and little education, but he was <u>not mentally incompetent</u>. He had an Alabama driver's license, and they are not issued to mentally incompetent individuals. The alleged victim also owned a truck and a boat/trailer combination that he hauled to the river to fish.

At trial, the only two witnesses to this incident other than Plaintiff and the alleged victim, Katie Conner and Bernice Conner, testified that the alleged victim was standing when shot by Plaintiff and that he then fell to the ground ( See Plaintiff's Exhibits "A" and "B" ). Katie Conner has also given a sworn affidavit to these facts ( See Plaintiff's Exhibit "C" ). Also, the alleged victim stated on a videotaped deposition that he had been standing when shot and then fell to the ground ( See Plaintiff's Exhibit "D" ).

Prior to Plaintiff's sentencing hearing, Defendant Kathryne T. Quattlebaum, Alabama Probation & Parole Officer, prepared a PSI Report, which included the following statements:

7

"Police reports reflect that on 4-12-97, Parris was visiting his ex-girlfriend and five-month-old baby at 714 Padenreich Avenue in East Gadsden. Parris had the child in his vehicle and left the residence. Katie Conner became upset and was sitting on the steps crying when Parris returned to the residence. Before he got out of the vehicle, Randy Davidson who lived at the residence and is mentally incompetent approached Parris about hurting Katie. Mr. Davis confronted and struck him on the forehead with the hilt of a knife. Mr. Davidson then turned to run from Parris, slipped in the mud and fell to the ground face down. By this time Mr. Davidson's sister Bernice Conner came out of the house and was standing on the porch. She witnessed Parris get out of the vehicle with a gun, walk up to Mr. Davidson and shoot Mr. Davidson in the back. Parris then pulled Katie Conner into his vehicle and left the scene." ( See Plaintiff's Exhibit "E" )

Plaintiff's sentencing hearing was held on October 11, 2000 ( See Plaintiff's Exhibit "F" ). At this hearing, Plaintiff was represented by Attorney Susan James. Attorney James pointed out to the court that at trial there was testimony that the alleged victim was a slow learner but that there was no evidence or testimony that he was mentally incompetent and that the PSI Report was incorrect on this point ( Plaintiff's Exhibit "F"

pgs. 441-442 ). Attorney James also pointed out to the court that the PSI Report was incorrect concerning the alleged victim being shot in the back when he was lying on the ground when in fact the alleged victim was standing on his feet when shot, and the witnesses confirmed this ( Plaintiff's Exhibit "F" pg. 443 ). Attorney James further pointed out that even though the trial court heard the testimony, which would enable it to recognize the false information, the Alabama Board of Pardons & Paroles would be considering it as well as prison officials and they would believe it to be true ( Plaintiff's Exhibit "F" pgs. 441 & 462 ). The prosecutor, Mr. Phillips, admitted that the alleged victim was shot while he was standing and not that Plaintiff stood over him and shot him while he was lying on the ground ( Plaintiff's Exhibit "F" pg. 446 ). Attorney James then asked the court to order that the PSI Report be corrected ( Plaintiff's Exhibit "F" pg. 461 ). The trial court stated that Mrs. Quattlebaum, who prepared the report, was not at Plaintiff's trial and that she prepared the PSI Report from a police report ( Plaintiff's Exhibit "F" pg. 461 ). Attorney James then mistakenly withdrew her request that the PSI Report be corrected and that an excerpt from the sentencing hearing discussing these matters be attached to the PSI Report ( Plaintiff's Exhibit "F" pg. 462 ). The trial court then ordered the court reporter to provide the excerpt ( Plaintiff's Exhibit "F" pgs. 462-464 ).

Plaintiff shows that no excerpt from the trial court was ever attached to the PSI Report to correct the false information. Because of this, the false information that Plaintiff shot a mentally incompetent man in the back while he was lying on the ground that is in the PSI Report will have a detrimental affect on the voting members of the Alabama Board of Pardons & Paroles when he is considered for parole.

On July 2, 2003, Plaintiff wrote a letter to the Alabama Board of Pardons & Paroles concerning this false information in the PSI Report ( See Plaintiff's Exhibit "G" ). In this letter, Plaintiff requested that the PSI Report be corrected or otherwise it would have an adverse affect on Plaintiff. Plaintiff sent portions of the trial transcript to support this letter. Plaintiff received no response to this letter. On 12-5-2003, Plaintiff received a memo from Mr. Jim Hayes, his Classification Supervisor advising him that no new PSI Report had been written and that it was under review.

As Attorney James predicted to the trial court, prison officials have indeed used the false information in the PSI Report to improperly classify Plaintiff. First, Plaintiff was placed in "Heinous" status on 7-18-2003 by Mr. Jim Hayes, Classification Supervisor ( See Plaintiff's Exhibit "I" ). Heinous status was a restricted custody status per the classification manual at that time that would prevent him from

transferring to a work camp facility or a work release facility. Plaintiff went to a segregation review board and asked Mr. Hayes why he had been placed in "Heinous" status and he told Plaintiff "because the victim was mentally incompetent and was lying on the ground when he was shot."

Plaintiff then wrote a letter to Attorney Hugh Davis, who is counsel for the parole board, a letter on January 12, 2005 ( See Plaintiff's Exhibit "J" ). In this letter, Plaintiff asked Attorney Davis to review his PSI Report and remove the false information from it. Attorney Davis never responded to this letter.

In approximately May of 2005, Plaintiff wrote a letter to Cynthia Dillard, Assistant Executive Director of the Alabama Board of Pardons & Paroles, pointing out the false information that is in Plaintiff's PSI Report ( No copy of this letter available ). Along with this letter, Plaintiff sent Ms. Dillard portions of the trial transcript, preliminary hearing transcript, and a video taped deposition by the alleged victim that establishes that the PSI is incorrect. On June 15, 2005, Cynthia Dillard responded to Plaintiff's letter ( See Plaintiff's Exhibit "K" ). In this letter, Ms. Dillard advised Plaintiff that she had sent all of Plaintiff's correspondence to Defendant Kathryne Quattlebaum and that she apparently refused to remove the false information from the PSI Report. A

11

disturbing portion of Ms. Dillard's letter is that she states that their usual source of information for PSI Reports are DA records and police reports…not facts established at trial! Ms. Dillard then goes on to say that "Officers cannot attend jury trials as they do not have the luxury of time to do so"!!!!! DA records and police reports more time than not prove out at trial not to be totally factual. Obviously, the facts that should go into a PSI report are those established at trial.

In approximately June of 2005, Plaintiff wrote a letter to Defendant Paul Whaley at the Central Records Office to complain that his "Heinous" classification was based upon false information in the PSI Report and that the alleged victim was not mentally incompetent and was not lying on the ground when shot ( See Plaintiff's Exhibit "M" ). In support of this letter, Plaintiff sent a copy of his sentencing hearing transcript where it was established that the alleged victim was not mentally incompetent and was not while lying on the ground.

On or about 8-31-2005, Defendant Paul Whaley, Director of Classification, placed Plaintiff in "R" Status. "R" Status is a restrictive classification that prohibits an inmate from transferring to a Work Camp Facility or a Work Release ( See Plaintiff's Exhibit "L"  203767R ).

12

According to the prison system Classification Manual, the "R" status is as follows:

"Add Appendix D
Pages 101 and 102

**APPENDIX D**

I. THE FOLLOWING CATEGORIES OF OFFENDERS WILL REQUIRE THE "R" SUFFIX:

1. Inmates whose offenses ( past or present ) indicate that a sex offense did occur in the commission of an offense, but for which there was no prosecution due to plea bargain or other considerations.

2. Juvenile adjudications for any offense which would equate with any offense falling under Megan's Law. Other juvenile cases will be considered on a case by case basis.

3. Inmates with arrest(s) for a sexual offense(s) for which there is no disposition but for which we have details will be considered on a case by case basis.

4.   Inmates with a single arrest for a sex offense where the disposition is shown as reduced to a non-sexual misdemeanor conviction may be considered if details reflect a sex offense was committed on a case by case basis.

5.   Multiple homicides of record: This includes any offense (nomenclature immaterial) which resulted in death. DUI homicides excluded.

6.   Robbery/Homicide: Killing in the commission of robbery or other crime or theft of victim after killing.

7.   Homicide using explosives and/or illegal weapon.

8.   Murder/Homicide with torture.

9.   Murder/Homicide to the defenseless. This category includes crimes against children, the elderly (65 or older), or the disabled of any age. (Does not include DUI homicide). This also includes those offenses in which the victim is sleeping, incapacitated ( knocked to the ground ), or otherwise incapable of defending self.

10.  Terroristic homicide.

11. Murder/Homicide with mutilation.

12. Drive-by murder/homicide.

13. Contract killing.

14. Killing of parent(s).

15. Gang-related homicide - this includes all participants.

16. Execution style homicide: Examples: Victim killed while being forcibly restrained such as hands and feet tied or being confined to a vehicle trunk, Close range gun-shot to the head ( 6 inches or less or evidence of powder burn ), etc.

17. Killing with Aggravated Circumstances/Overkill - Examples: pursuit and killing a victim attempting to flee for his/her life, shooting or stabbing a victim multiple times ( three or more ), reloading of weapon and continuing to fire, etc.

18. Inmates convicted of stalking or crime involving stalking behavior, or felony kidnapping ( any degree ) or cases wherein the details of the crime reflect behavior which could be construed by the Code of Alabama or constitute a kidnapping even though not convicted of such would be assigned the "R" Suffix.

19. On a case by case basis Offenders with offenses which do not involve death, but are of a reprehensible nature, the CRB may, with the approval of the Director of Classification or the Assistant Director of Classification, bar that inmate from minimum-out and/or community custody eligibility and assign the "R" Suffix on the offender's AIS number."

Plaintiff asked Mr. Jim Hayes, his Classification Supervisor, why he had been placed in "R" status by Defendant Paul Whaley and what part of this regulation applied to him. Mr. Hayes advised Plaintiff that he was placed in "R" status because the victim was mentally incompetent and was shot in the back while lying on the ground. Mr. Hayes then advised Plaintiff that he had recommended Plaintiff for "R" status in Plaintiff's progress review of 7-20-2005 ( See Plaintiff's Exhibit "I"

) and that Plaintiff was placed in "R" status per section 19 of the regulation: "On a case by case basis Offenders with offenses which do not involve death, but are of a reprehensible nature..."

On December 9, 2005, Defendant Paul Whaley finally responded to Plaintiff's letter of June 2005 complaining about his "Heinous" classification. In his letter ( See Plaintiff's Exhibit "N" ), Defendant Whaley states that he was obligated to use the PSI Report as written. He also stated that his classification could be reconsidered if the PSI Report is amended.

Plaintiff has exhausted every possible avenue to have this false information removed from the PSI Report and now files this present Section 1983 action.

## GROUND TWO

Plaintiff's Due Process rights under the Fourteenth Amendment have been violated by Defendant Kathryne T. Quattlebaum, Alabama Probation & Parole Officer, who placed unauthorized and unreliable prior arrest information in Plaintiff's Pre-Sentence Investigation Report ( hereinafter referred to as "PSI Report" ).

## FACTS

According to Rule 26.3 (2), A.R.Cr.P., the PSI Report may contain "A statement of the defendant's prior criminal and juvenile record, if any."

Defendant Quattlebaum, however, violated this rule, and Plaintiff's Due Process rights under the Fourteenth Amendment when she placed arrest information in the PSI Report that should not have been included.

First, Defendant Quattlebaum listed twenty-six (26) traffic violations in the PSI Report out of fifty (50) entries ( See Plaintiff's Exhibit "E" pgs. 4-7 ). Traffic violations are not criminal offenses and should not have been included in this "Record of Arrest(s)". These traffic

18

violations were included in the PSI Report by Defendant Quattlebaum to prejudice him to the trial court to increase his sentence in the present conviction; and this violates Plaintiff's Due Process rights under the Fourteenth Amendment.

Secondly, Defendant Quattlebaum listed ten (10) criminal charges in the "Record of Arrest(s)" ( See Plaintiff's Exhibit "E" pgs. 4-7 ) that had been dismissed:

| Date | Agency | Charge | Disposition |
|---|---|---|---|
| 9-16-86 | Calhoun County | Harassment | Dismissed |
| 5-10-88 | Calhoun County | Assault II | Nolle prossed |
| 5-12-88 | Calhoun County | Harassing Communications | Nolle prossed |
| 7-09-92 | Calhoun County | Assault I | Nolle prossed |
| 10-16-92 | Etowah County | Assault I | Nolle prossed |
| 5-06-93 | Attalla PD | Theft III | Nolle prossed |
| 9-15-94 | Calhoun County | Receiving Stolen Property II | Nolle prossed |
| 8-08-95 | Gadsden PD | Carrying Pistol Without License | Nolle prossed |
| 6-19-96 | Calhoun County Sheriff's Office | Unlawful Poss. of Controlled Substance 3 counts | ** Disposition Unknown |

** False charges were dismissed by Sheriff's Office

| 3-21-97 | Etowah County District Crt. DC-97-1026 | Public Intox. | Nolle prossed |

19

These dismissed criminal charges were included in the PSI Report by Defendant Quattlebaum to prejudice him to the trial court to increase his sentence in the present conviction; when in fact, he was innocent of all of these dismissed charges.