```
 1   OCTOBER 11, 2000                                    1:30 P.M.

 2                        SENTENCING HEARING

 3        MS. JAMES:  Judge, we're ready whenever you are.

 4        THE COURT:  I've got a couple of things I need to

 5   say before we get into the specifics of today's

 6   sentencing hearing.  I have received -- Let me state

 7   this for the record.

 8        Yesterday I received a petition in my office

 9   entitled "For Brent Andre Parris", and there were -- If

10   we added it up right, there were six hundred and

11   thirty-five names on this petition asking for leniency

12   for Mr. Parris.

13        I also received a letter from Dr. Randy Hayes,

14   H-a-y-e-s, from The Church on the Rock.  I received a

15   letter from Curtis, C-u-r-t-i-s, Parris.  Today I

16   received in my office, just right before walking in

17   here, a petition for Brent Andre Parris requesting

18   leniency, signed by fifty-four names, as well as a

19   letter from William -- Well, it says William and Sheila

20   Rozier, R-o-z-i-e-r, but it was signed William Houston

21   Rozier on the outside.

22        And I just wanted to state that for the

23   record, that those documents have been turned over to

24   the Court.

25        According to my notes here and according to
```

Plaintiff's Exhibit-
"1"

the Court file, the case number in this case is
CC-97-109 -- 1099, and the charge was Attempted Murder,
and on August 31st Mr. Parris was found guilty by a
jury on the offense of Attempted Murder, and today is
the day for his sentencing.

Before I get into the specifics of the
sentence and ask if Ms. James has anything to state and
then, of course, Mr. Phillips, as well, or Ms.
Griffith -- Mr. Phillips, what is your understanding on
the range of punishment for this?

MR. PHILLIPS:  Twenty to Life.

THE COURT:  Okay.  That's what I understood.

Susan, is that your understanding?  Ms. James.
As well?

MS. JAMES:  Yes, Your Honor.

THE COURT:  Twenty to Life.  Okay.  I guess, before
I -- And, of course, before I pass sentence in this
case, I'll certainly give Mr. Parris an opportunity to
speak.

Ms. James, do you have anything to say prior
to sentencing?

MS. JAMES:  Yes, Your Honor.  Are we going to take
up the Pre-sentence Report?

THE COURT:  Yes, ma'am.

MS. JAMES:  There are a couple of matters I need

PLAINTIFF'S Exhibit
"F"

1      to point out.

2          THE COURT:  We are.  Yes, ma'am.  This will be the

3      time to do it, so go right ahead.

4          MS. JAMES:  Okay.  I received the Pre-sentence

5      Report a day or so ago and prior to the beginning of

6      the hearing today.  I went over it with Mr. Parris,

7      because he didn't receive a copy himself and I didn't

8      have time to get one to him before today, but we have

9      gone over it.  And he's pointed out a couple of things

10     to me and I've noted a couple of things.

11          And for whatever it's worth, I do know that

12     the report not only is considered by the Court for

13     purposes of sentencing and the Court heard the

14     evidence, but I know also the report follows Mr. Parris

15     to prison and is considered by the Alabama Board of

16     Pardons and Parole, so I wanted to clear up a couple of

17     matters.

18          And they are -- I direct the Court's attention

19     to page two, paragraph two of the Pre-sentence Report.

20     And I think that it contains information that was not

21     established by the evidence that came out during the

22     course of Mr. Parris' trial.

23          Particularly, beginning with the sentence

24     before -- This is about the fourth line down.  "Before

25     he got out of the vehicle Randy Davidson, who lived at

PLAINTIFF's Exhibit "F"

1    the residence and is mentally incompetent, approached

2    Parris about hurting Katie." There was some attempted

3    testimony by the sister, Bernice Conner, to suggest

4    that, you know, he had some -- She said he was a slow

5    learner, and I think that that was pretty much all that

6    came out during the course of the trial, that he was a

7    slow learner and that he got a check because of that

8    and he had some problems in school.

9        But we, certainly, didn't have any

10    psychological or psychiatric testimony that Mr.

11    Davidson was mentally incompetent, and I just think

12    that that's kind of an overstatement, to have that

13    included in the report.

14        But the report goes further, stating -- And

15    this is another sentence down.  "Mr. Davidson then

16    turned to run from Parris, slipped in the mud and fell

17    to the ground, face down. By this time, Mr. Davidson's

18    sister, Bernice Conner, came out of the house and was

19    standing on the porch.  She witnessed Parris get out of

20    the vehicle with a gun, walk up to Mr. Davidson and

21    shoot him in the back.  Parris then pulled Katie Conner

22    into his vehicle and left the scene."

23        My recollection of the testimony -- And I

24    expected that that was what Bernice Conner was going to

25    testify to, because that was somewhat consistent with

PLAINTIFF'S EXHIBIT
"F"

1    her testimony at the Preliminary Hearing.  However,

2    that was not what her testimony was during the course

3    of the trial, that it happened that way.

4        The -- Also, the part about Mr. Parris pulled

5    Katie into the car, that was contradicted by the

6    State's own witnesses.  And, again, the relevance of

7    the objection is simply that I think that that -- It,

8    certainly, overstates what the offense conduct was

9    alleged to be, because it gives the false impression

10   that Mr. Davidson was simply helpless, lying on the

11   ground, face down, and he walked up and shot him

12   directly in the back.

13       And that would be -- It was contradicted by

14   the medical testimony, as well as the testimony of the

15   State's witnesses that contend that they saw some

16   portion of this incident.

17       I believe that's all with regard to -- There

18   is also a part that is omitted from the Pre-sentence

19   Report, that I think is important if we're going to

20   outline the total facts and circumstances, and that

21   would be on page three, where it says, "Parris later

22   arrested at the Town -- Parris was later arrested at

23   the Town House Motel in East Gadsden.  The weapon, a

24   Jennings .380 semiautomatic pistol, was recovered from

25   Parris when he was arrested, period."

PLAINTIFF'S Exhibit
"F"

1    There is no mention of the fact that Mr. Jason

2    Conner fired into the vehicle, and there was evidence

3    of that at the trial.  And I think it's important.

4    Although it was after the fact, I think it's important

5    particularly, with regard to why he left and went to

6    the Town House Motel, because he did have his infant in

7    the car, which is referenced earlier.

8    And, of course, in the Victim Impact

9    Statement, I have no way to know for sure about this --

10   where it states on page three, victim impact, about the

11   fifth sentence down, says, "Mr. Davidson presently

12   resides in a hospital or some type of long term care

13   facility in Chattanooga, Tennessee."

14   That may be true.  I just don't have any

15   knowledge of that.  That did not come out at the trial,

16   so it may be something additional that the probation

17   officer has learned.  But I think that, although he's

18   been in and out of the hospital, appeared that that was

19   what the testimony was and was in the hospital at the

20   time his deposition was taken.

21   There was no information provided us that he

22   was going to be in some long term care facility, and if

23   that is simply speculation, then I would have some

24   concern about its inclusion in the report, because

25   it -- While we have to acknowledge his injuries are

PLAINTIFF'S Exhibit
"F"

serious and likely irreparable in terms of him

regaining the bodily functions that he lost, I just --

That one I have to question.

And, again, I'm not saying that it's not true.

I just would like to know what source of information

that came from.

Then, with regard to the record of arrest,

there are -- On page five of the report, there are two

references, 7-9-92, at the top of the page, Calhoun

County, Assault One, nol-prosed.  And 10-16-92, Etowah

County Circuit Court, Assault One, nol-prosed.

Mr. Parris advises me that those two

particular charges, he was not charged with.  He

advises me that -- If you'll refer back to page four on

7-3-90, where it says Calhoun County Circuit Court,

Youthful Offender, Shooting into an Occupied Vehicle,

that he served approximately fifteen months in jail on

that particular charge, and that he was, in fact, in

custody between July and October of 1992, and was not

released until March of 1993, therefore, making it

impossible for him to have been arrested for those two

charges on those particular dates.

And other than that, I don't think we had any

other objections.

THE COURT:  Any response from the State?

PLAINTIFF'S Exhibit
"F"

1    MR. PHILLIPS:  Judge, with regard to those two

2    assaults, we'd have to ask Kathy about that.  I don't

3    know where that came from or what records she was

4    relying on.

5    With regard to the problem that she mentions,

6    they point out about what Jason did.  That has nothing

7    to do with sentencing.  I don't see how that's material

8    or should be included.  Plus, I don't think that there

9    would be any way that the Probation Office would have

10   been aware of that information to have put it in here.

11   With regard to the prognosis for Mr.

12   Davidson's recovery, all I know about that is you

13   observed him as well as I did.  You saw the condition

14   he was in.  You know where we had to -- where he was.

15   The last time I knew anything about him was in a

16   hospital in Chattanooga, Tennessee.

17   They had a lot of concern about whether or not

18   the operation that they had performed was going to be

19   successful.  And that's -- as far as I know, he's still

20   there.  No one has told me different.  He could be

21   somewhere else, but I don't know.

22   The factual questions about how the incident

23   occurred, the testimony, as I recall, was that he was

24   shot in the back and knocked down and not that Mr.

25   Parris stood over him and shot at him, however, after



PLAINTIFF'S Exhibit

"F"

1     THE COURT:  I think, for the record, you need to

2     tell me you're going to re-file it, I assume.

3         MS. JAMES:  Yes, I will do that.

4         THE COURT  Because, I think, technically, under the

5     Criminal Rules of Procedure it might have been filed a

6     little bit early, but I -- No criticism of that.  It's

7     just that I think it might be better if you'll re-file

8     it, and we'll certainly take up that.

9         MS. JAMES:  Yes, sir.

10        THE COURT:  Do you know yet, are you going to

11    represent Mr. Parris on appeal, if any, in this case?

12        MS. JAMES:  I don't believe I am, Your Honor.  But

13    that's something that we need to discuss.  I do want to

14    ask you, though, before you finish if you passed ruling

15    on the pre-sentence objections that I made.

16            I mean, I was hoping the Court would order

17    that it be corrected to reflect the objections that

18    were made.

19        THE COURT:  Well, no, I didn't rule on that.  The

20    Court, I guess, understands what the statements are.

21    The Court heard the testimony, and I will reflect --

22    And I read it this way when Mrs. Quattlebaum prepared

23    the report, that she was not at the trial.  And she,

24    basically, did it from the police report.

25            So, I'm -- I guess what I'm saying is the

PLAINTIFF's Exhibit
"F"

1    Court heard the testimony in this case, was the Trial

2    Judge, and although I'm not going to sit here and

3    comment who's right or wrong in the statements of

4    counsel, I took the facts that was in the Pre-sentence

5    Report -- Yeah, the Pre-sentence Report, just to be

6    what came from the police reports and not the testimony

7    that this Court heard.

8         MS. JAMES:  Could I ask, Judge, that we -- What you

9    just said, because I'm not concerned so much about what

10   you considered, because I expected that you would

11   consider what you heard.

12        THE COURT:  Sure.

13        MS. JAMES:   I'm more concerned with what the

14   prison authorities and parole people will look at, and

15   I think, particularly, with regard to him being on the

16   ground and him shooting him point blank in the back.

17             If I could ask, maybe, that rather than

18   correct the Pre-sentence Report, that the Court would

19   simply order that this excerpt from the testimony

20   that's being taken by the court reporter be attached to

21   the Pre-sentence Report, and I think that clears it up.

22        THE COURT:  I have no problems with that.  I'll

23   direct and state that for the record that -- What's

24   your request again on that, now?

25        MS. JAMES:  That the testimony just simply did not

PLAINTIFF's Exhibit
"F"

1    come out during the course of the trial, and I don't

2    want to have to send DOC the entire trial transcript.

3    That he was on the ground and he got behind him and

4    shot him, as Ms. Conner had previously indicated, I

5    think, in some police reports.

6          I don't disagree that that's probably where

7    the probation officer got it.  I fully expected her to

8    testify to that at the trial, and she did not.  So,

9    it's inconsistent with what actually came out in the

10   evidence of the trial.

11        THE COURT:  So, what are you asking be attached to

12   the --

13        MS. JAMES:  Well, what you just said.  You said

14   that -- The past couple of pages that we've just done,

15   and that would involve your saying she took that from

16   police reports and I considered what happened at the

17   trial.

18        THE COURT:  That is correct, and I'll state that.

19          And, Sue, I'll ask that as part of the Court

20   Order in this case, that it reflect that the

21   defendant -- I mean -- Excuse me.  The Court, in

22   reviewing the Pre-sentence Report in this case,

23   reflected that the reports of the incident came from

24   the police reports, is how the probation officer stated

25   it, and that the Court was the Trial Judge hearing the

Plaintiff's Exhibit
"F"

1    case and it understands and is familiar with the facts

2    of actually what happened.

3        MS. JAMES:  Right.  That way I can just take an

4    excerpt from her testimony that would be inconsistent

5    and provide that to DOC.  Thank you.

6        THE COURT:  All right.  Now, on the question of

7    appeal, we have a time limit here on this, and if you

8    are not going to represent -- You don't have to tell me

9    now.  I don't mean -- That's not fair to you or Mr.

10   Parris.  But, you know, if he is indigent and needs to

11   be appointed -- Of course, Number 1, if you desire to

12   take an appointment, I'd certainly be glad to do that.

13   I'm not trying to get you to or not to.  You're not a

14   member of our local Bar here, so I'm not ordering it.

15   I do --

16       MS. JAMES:  Well, you could.

17       THE COURT:  Well, I could, but I wouldn't do that

18   to you, since you don't practice law here with us.  But

19   I do need to know very promptly if you're going to

20   represent Mr. Parris, because if you're not, I'll need

21   to appoint someone else.

22       MS. JAMES:  Yes, sir.  And we'll decide that.  I

23   think that -- We'll talk about it.

24       THE COURT:  Just let me know in writing.

25       MR. PHILLIPS:  Judge, with the question of

PLAINTIFFS Exhibit
"F"