IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE MIDDLE DISTRICT OF ALABAMA

NORTHERN DIVISION

RECEIVED

2006 OCT 16 A 9: 34

DEBRA P. HACKETT, CLK
U.S. DISTRICT COURT
MIDDLE DISTRICT ALA

| | |
|---|---|
| BRENT ANDRE PARRIS, ) | |
| #203767, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| VS. ) | Civil Action: 2:06-CV-303-MEF |
| ) | |
| KATHRYNE T. QUATTLEBAUM, ) | |
| Alabama Probation & Parole ) | |
| Officer of Alabama Board of ) | |
| Pardons & Paroles; and ) | |
| PAUL WHALEY, Director of ) | |
| Classification, Alabama ) | |
| Department of Corrections, ) | |
| ) | |
| Defendants. ) | |

PLAINTIFF'S RESPONSE TO COURT ORDER OF

OCTOBER 3, 2006; AND RESPONSE TO WRITTEN

REPORTS BY DEFENDANTS

Comes now Brent Andre Parris #203767, Plaintiff in the above-styled cause, and in response to this Honorable Court's Order of October 3, 2006, shows as follows:

1

Plaintiff filed his initial § 1983 complaint and exhibits "A" through "N", and he would rely on those pleadings and documents. Plaintiff has since filed three (3) responses to written reports by Defendant Whaley and Defendant Quattlebaum; and he would rely on those pleadings. The only written report, then, that Plaintiff has not responded to is the recent supplemental report submitted by Defendant Quattlebaum on September 29, 2006; and Plaintiff now responds to that supplemental report:

## RESPONSE

On September 11, 2006, this Honorable Court issued an Order directing Defendant Quattlebaum to submit a supplemental report which addresses Plaintiff's claim that after being provided evidence that the PSI contained false information, she refused to remove the false information and did not do so until Plaintiff filed the present § 1983 complaint which makes her liable to reimburse to Plaintiff the $250.00 filing fee. Defendant Quattlebaum filed this report but offered no adequate reason why she failed to correct the PSI prior to the § 1983 complaint being filed:

1.  It was not the state court (circuit court) judge's duty, or trial counsel's duty, to send excerpts from the

2

sentencing hearing transcript to the parole board to offset a PSI which contained false information. It was Defendant Quattlebaum's duty to remove the false information from the PSI.

2. Plaintiff did send the sentencing transcript and victim's deposition to the Parole Board where it ended up in the hands of Cynthia Dillard. Plaintiff sent this material to have the false information removed from the PSI report, not to have it put in a box at the parole board and Department of Corrections ( as Ms. Dillard did ). The voting parole board members only review the PSI report and that is all Defendant Whaley and his staff reviews for classification purposes. It was imperative, then, that once it was established that there was false information in the PSI report, it should have been removed.

3. This is twice that Defendant Quattlebaum has claimed she was without authority to change reports without a directive to do so, and that she was not given the directive until after the § 1983 complaint was filed – but she never states who at the parole board gave her this directive.

4. Unbelievably, Defendant Quattlebaum argues that the false information did not mislead one as to the basic facts because the victim being a "slow learner" is not much different than the victim being "mentally incompetent". Also, that the victim being shot in the back while standing is not much different than the victim being shot in the back while lying on the ground.

First of all, there are rules in the Department of Corrections classification which restrict inmates where the victim was injured while lying on the ground or where the victim is mentally incompetent. And secondly, common sense dictates that parole board voting members would cast inmates in a less favorable light if they shot a mentally incompetent person while he was lying on the ground.

5. Defendant Quattlebaum claims that if the parole board is held to a strict standard concerning false information in the PSI report that they might as well just order the trial transcripts in all cases. If they continue their practice of putting false information in PSI reports ( Plaintiff is not the only inmate who has filed a § 1983 complaint about this ), then maybe they should order trial transcripts. Plaintiff would suggest, however that they first just try doing their jobs properly. If Defendant

Quattlebaum would have bothered to interview Plaintiff ( he was in the county jail ) as she wrote the PSI and would have permitted Plaintiff to review her statement of the facts, Plaintiff could have pointed out the false information and provided his version of the events of that night ( as set forth in the attached affidavit marked as Plaintiff's Exhibit "O" ), she could have investigated the facts, and this § 1983 complaint never would have been filed.

6. Accurate PSI reports are important in the prison setting for classification purposes and at the parole board, of course, for parole consideration purposes. Words are everything and can have negative effects well into the future. Plaintiff did not testify at his trial at the suggestion of his attorney so it was important that Defendant Quattlebaum interview him for his version of events as set forth in Petitioner's attached affidavit (marked as Petitioner's Exhibit "O" ) and these facts should have at least been included in the PSI report under "Subject's Statement." The Plaintiff's proposes that the details of the offense should accurately reflect the facts of the incident as evidenced at trial, and requests that

5

this Honorable Court order Defendant Quattlebaum to correct the entire Statement of Facts to include the following:

"On the night of April 12, 1997, Parris was visiting his wife, Katie Conner-Parris, and their ten-week-old baby at the home of Jason Conner in Gadsden, Alabama (trans. 159). At some point late in the evening, Parris and Katie began to disagree over where the family would spend the night (trans. 162-163). Parris and Katie placed the baby and his belongings into the vehicle (pre-lim. 29; trans. 202-203, 216; Dep. 19). Parris, Katie, and the baby then went to a convenience store. Upon returning, a verbal argument erupted over finances; Katie wanted to spend the night in a motel, while Parris wanted to return home (trans. 183-184). Parris briefly left with the baby and returned a few minutes later (trans. 165-168, 187).

When Parris returned to the Conner home, the victim, Randy Davidson, retrieved a large knife from a bedroom drawer (dep. 40), and went to confront Parris (dep. 52). Davidson approached Parris' vehicle from the driver's side (dep. 56; trans. 169, 214), reached through the driver's window, and stabbed Parris in the face with the knife (dep. 25, 28, 31, 43, 56-60, 83-87, 99; trans. 176, 189, 205). Davidson was at Parris vehicle for at least a minute

(trans. 170, 189, 217), during which time a scuffling match ensued over the knife (trans. 215). During this struggle, Parris was cut several times with the blade of the knife (trans. 195, 248; pre-lim 25). Parris was cut in the face and had blood in his eyes (pre-lim. 25, trans. 195, 248). Davidson then attempted to open the rear door of the vehicle in order to get to Parris' baby (trans. 205).

In a tense moment during the heat of battle, Parris grabbed a pistol from the vehicle's console and shot Davidson one time in self-defense (trans. 206). Davidson was shot in the right flank (trans. 310, 320-326), and was paralyzed from the incident.

Following the gunshot, Jason Conner and Berenice Conner emerged from the house holding an assault rifle and aimed it at Parris (trans. 193-194, 209, 218). Parris saw Jason with the rifle and decided to leave for fear of his safety (trans. 237-238). As Parris was already in the street, Jason fired several shots into the vehicle occupied by Parris, Katie, and the baby (pre-lim. 21; trans. 193). To escape gunfire, Parris left and drove down the street to a motel (trans. 238), where he stopped and called the police (trans. 239, 248). Paramedics treated Parris at the scene and taken to the local hospital. Afterwards, Parris was taken to the local jail where he gave a written

statement and was later arrested. Parris was convicted of attempted murder and sentenced to 35 years in prison."

Instead of a factual statement of facts as above, the original PSI written by Defendant Quattlebaum only contained a short "State" version and false information that painted Petitioner as someone who shot a mentally incompetent individual who was lying on the ground. How can Defendant Quattlebaum now suggest that this false information would not mislead someone?

WHEREFORE, it is clear that Defendant Quattlebaum should have removed the false information from the PSI report once she received evidence that it contained false information; and when she did not remove the false information until Plaintiff filed the present § 1983 complaint, she became liable to reimburse Plaintiff for the filing fees he was required to pay in this action.

Date: October 12, 2006          Respectfully submitted,

*Brent Andre Parris #203767*

Brent Andre Parris #203767
Limestone Correctional Facility
Dorm 9-A-14
28779 Nick Davis Road
Harvest, Alabama 35749

8

### CERTIFICATE OF SERVICE

I hereby certify that I have served a copy of the above and foregoing "Plaintiff's Response to Court Order of October 3, 2006; and Response to Written Reports by Defendants" on the: Honorable Tara S. Knee, Assistant General Counsel, Alabama Department of Corrections, Legal Division, 301 S. Ripley Street, P. O. Box 301501, Montgomery, Alabama 36130 and counsel for Defendant Quattlebaum: Honorable Steven M. Sirmon, Assistant Attorney General, Alabama Board of Pardons and Paroles, 301 S. Ripley Street, P. O. Box 302405, Montgomery, Alabama 36130 by placing copies of the same in the U.S. Mail, postage prepaid, this date.

Done this the 12th day of October, 2006.

*Brent Andre Parris #203767*

Brent Andre Parris #203767