IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| BRENT ANDRE PARRIS, #203767, <br><br>　　　　Plaintiff, <br><br>VS. <br><br>KATHRYNE T. QUATTLEBAUM, Alabama Probation & Parole Officer of Alabama Board of Pardons & Paroles; and PAUL WHALEY, Director of Classification, Alabama Department of Corrections, <br><br>　　　　Defendants. | Civil Action: 2:06-CV-303-MEF |

AFFIDAVIT OF BRENT ANDRE PARRIS

Comes now Brent Andre Parris #203767, Plaintiff in the above-styled cause, who is over the age of twenty-one years and who is a resident citizen of the State of Alabama, and he states the following under oath:

1

If I had testified in my own defense, I would have testified that the victim attacked me unprovoked with a large knife, and that a wrestling match ensued over the knife. During this struggle, which lasted over one minute, the victim actually cut me several times with the blade end of the knife, not the butt. The victim then attempted to unlock the rear door of my vehicle in order to get to my infant child. It was a dark and stormy night on the night of the incident. The victim was momentarily moving towards the house where a porch-light was burning, stopped, bent over, picked something up off the ground, then began coming towards my vehicle again. The porch-light backlit the victim and reduced him to a silhouette.

To be better able to defend myself and my infant child, I began to exit the vehicle. I was in fear for my life, so I grabbed a pistol that was kept in the vehicle. The victim continued towards me and my son, who was still in the vehicle, so I raised the gun and fired a single shot in the victim's general vicinity —not to hit him— but to only scare him away. At the exact moment the gun fired, the victim suddenly turned sharply to his left, took several steps, and then fell to the ground. My first reaction was that the victim, in an attempt to seek cover, had dove behind another vehicle.

I did not initially leave the scene because I was also concerned for the safety of my wife, Katie Conner, who was standing on the porch. Not knowing what the victim would do next, I exited the vehicle in order to better protect Katie and our baby from the victim, who was on drugs and had already attacked me, cut me, and tried to grab my child. At this time, Jason Conner emerged from the house with an SKS assault rifle and began to shoot at me. Katie and me got into the vehicle and drove away, not to flee the scene, but to escape gunfire from Jason Conner. I drove to the first public place (Town House Motel) and called the police.

I did not know that I had actually shot the victim until the police officers at the motel informed me of it, because it was a dark and the lighting was poor in the area of the incident. Also, my vision was blurred from the blows to the head and because I had blood in my eyes from being cut with the knife. My first question to Officer Freeman was "Did I hit him?", and he stated that I had shot the victim. I was treated at the scene for my knife wounds, and then I was transported to the hospital for sutures. While I was at the hospital, the Detectives came and asked me some questions. I was asked to come to the jail and give a written statement. I was placed in jail and charged with shooting my attacker.

The victim — high on drugs and alcohol — attacked me for no reason and violently assaulted me with large hunting knife while I was calmly sitting in my own vehicle. I did not provoke the victim in any way. I did not intend to harm the victim, and I did not attempt to murder the victim. I only fired one shot in the victim's general vicinity because I was afraid for my life and the life of my family.

I did not shoot the victim in the back or from behind; medical records show that the victim was shot from the side in the right flank area. The victim was standing on his feet and facing me at the time he was shot. The victim was not mentally incompetent. I spent a lot of time around the victim prior to this incident, and I know he had average comprehension skills. Although he was a slow at times, he had normal intelligence.

I was convicted of attempted murder and sentenced to 35 years in prison. In 2004, I was informed that I had been placed in the 'Restricted' category of classification by the Department of Corrections. I wrote letters to Parole Officer Kathryn Quattlebaum, Classification Officer Jim Hayes, Parole Board Attorney Hugh Davis, Parole Board Executive Director Cynthia Dillard, and Department of Corrections Classification Director Paul Whaley, informing them of the erroneous information contained within the PSI

Report and requesting that it be corrected. These requests were all denied. I exhausted every possible avenue to have the false information corrected, and I was forced to file the present action in order to seek relief.

_Brent Andre Parris_
Brent Andre Parris #203767

### Notary Public

Before me, the undersigned public notary of the said county and state, personally appeared Brent Andre Parris, who is known to me, and executed the foregoing instrument before me on this 12 day of October 2006.

_Mark H Reeve_
Notary Public

My Commission expires: 9-26-07